1  SHARON L. ANDERSON (SBN 94814)
   County Counsel
2  JANET L. HOLMES (SBN 107639)
   Deputy County Counsel
3  COUNTY OF CONTRA COSTA
   651 Pine Street, 9th Floor
4  Martinez, California 94553
   Telephone:  (925) 335-1800
5  Facsimile:   (925) 335-1866
   Email: jholm@cc.cccounty.us
6
   Attorneys for Defendants
7  COUNTY OF CONTRA COSTA,
   SHERIFF WARREN RUPF,
8  MOULE, GARDNER, WESTERMAN,
   MARTINEZ, GIBSON, VORHAUER
9

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14

15  LANCE JOHNSON, JOSEPHINE          No.   C 09-1241 WHA
    JOHNSON ANADOLA AND ARTHUR
16  LEE,                             DEFENDANTS' OPPOSITION TO
                                     PLAINTIFFS' MOTION FOR PARTIAL
17            Plaintiff,             SUMMARY JUDGMENT AGAINST
                                     COUNTY OF CONTRA COSTA, JEFF
18  v.                               MOULE AND BRIAN GARDNER

19  COUNTY OF CONTRA COSTA,
    SHERIFF WARREN RUPF, AND         Noticed Date:  September 2, 2010
20  DOES 1 THROUGH 20, INCLUSIVE,    Noticed Time: 8:00 a.m.
                                     Hon. William H. Alsup
21            Defendants.            Courtroom: 9
                                     Date Action Filed: March 23, 2009
22                                   Trial Date: September 27, 2010

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER-  C 09-1241

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.  MOULE AND GARDNER CANNOT BE FOUND LIABLE ON THE FIRST
        CAUSE OF ACTION FOR IMPROPER SEARCH:  THE SEARCH
        WARRANT WAS VALID ON ITS FACE, AND EXECUTING OFFICERS
        ARE ENTITLED TO QUALIFIED IMMUNITY. . . . . . . . . . . . . . . . . . . . . . . 7
        A.  The Warrant Was Facially Valid. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        B.  Defendants Moule and Gardner Are Entitled to Qualified Immunity. . . . . . 8

    II.  SERGEANT MOULE CANNOT BE FOUND LIABLE FOR "SUPERVISORY
        LIABILITY" UNDER SECTION 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.  PLAINTIFFS CANNOT ESTABLISH ANY STATE LAW CAUSES OF ACTION
        (FOURTH, NINTH AND TENTH CAUSES OF ACTION) AGAINST
        DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        A.  The Causes of Action for Negligence and Civil Code Section 52.1 Fail
            Because Plaintiffs Did Not Allege Compliance, and Did Not Comply,
            With the Government Tort Claims Act
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        B.  The County Cannot Be Directly Liable On Any State Law Cause Of Action
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        C.  Plaintiffs Cannot Establish Trespass As A Matter Of Law
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        D.  There Can Be No Negligence As A Matter Of Law On The Facts Alleged
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        E.  Plaintiff Cannot Establish As A Matter Of Law That Any Defendant Violated
            The Bane Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        F.  Immunities Shield All Defendants on Plaintiffs' Claims for Trespass,
            Negligence and Bane Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

CASES

*Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205(1994) . . . . . . . . . . . . . . . . . . . . . . . 20

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Baughman v. State*, 38 Cal. App. 4th 182 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Beck v. City of Upland*, 527 F.3d 853(9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Carpiaux v. City of Emeryville*, 2007 U.S. Dist. LEXIS 91574 (N.D. Cal. Dec. 13, 2007)  9, 17

*Church of Christ in Hollywood v. Superior Court*, 99 Cal. App. 4th 1244 (2002) . . . . . . . . . 17

*City of Sacramento v. Superior Court,* 131 Cal. App. 3d 395 (1982) . . . . . . . . . . . . . . . . . . . 18

*Clarke v. Hoek,* 174 Cal. App. 3d 208 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Crowe v. County of San Diego*, 593 F.3d 841(9th Cir. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . 8

*Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ewing v. City of Stockton*, 2008 U.S. Dist. LEXIS 9528, 100 (E.D. Cal. Feb. 7, 2008)  . . . . 20

*Fall River Joint Unified School Dist. v. Superior Court,* 206 Cal. App. 3d 431 (1988) . . . . . 15

*Franks v. Delaware*, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Garman v. Magic Chef, Inc.,* 117 Cal. App. 3d 634 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Groh v. Ramirez*, 540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Herve v. San Francisco*, 2004 U.S. Dist. LEXIS 25281 (N.D. Cal. 2004) . . . . . . . . . . . . . . 19

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . 15

*Janis v. California State Lottery Commission,* 68 Cal. App. 4th 824 (1998) . . . . . . . . . . . . 15

*Javor v. Taggart*, 98 Cal. App. 4th 795, 120 Cal. Rptr. 2d 174 (2002) . . . . . . . . . . . . . . . . 20

*Jenkins v. County of Orange*, 212 Cal. App. 3d 278 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621(9th Cir. 1988) . . . . . . . . . . . . . . 16

*Los Angeles Co. v. Rettele*, 550 U.S. 609 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Maestrini v. City and County of San Francisco*, 2009 U.S. Dist. LEXIS 25179, *19-23 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Marks v. Clarke*, 102 F.3d 1012 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Massachusetts v. Sheppard*, 468 U.S. 981 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mendoza v. City of Los Angeles,* 66 Cal. App. 4th 1333(1998) . . . . . . . . . . . . . . . . . . . . . . . 19

*Mendoza v. Whitehouse*, 2008 U.S. Dist. Lexis 63988 (N.D. Cal. 2008) . . . . . . . . . . . . . 9, 13

*Mills v. Graves*, 930 F.2d 729 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 17

*Nelson v. State of California*, 139 Cal.App.3d 72 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nunn v. State of California*, 35 Cal. 3d 616 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ortiz v. Van Auken*, 887 F.2d 1366 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Parkes v. County of San Diego*, 345 F. Supp. 2d 1071(S.D. Cal. 2004) . . . . . . . . . . . . . . . 20

*Pearson v. Callahan*, 555 U.S.___, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) . . . . . . . . . . . 11

*Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2001) *aff'd Groh v. Ramirez*, 540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 14, 17

*Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 12

*Romero v. Kitsap County*, 931 F.2d 624 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Searcy v. Hemet Unified School Dist.*, 177 Cal. App. 3d 792 (1986) . . . . . . . . . . . . . . . . . . 16

*Simmons v. Navajo County* 2010 U.S. App. LEXIS 12858 (9th Cir. June 23, 2010) . . . . . . . 13

*Smiddy v. Varney*, 665 F.2d 261(9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Susman v. City of Los Angeles,* 269 Cal. App. 2d 803 (1969) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . 20

*United States v. Clark*, 31 F.3d 831(9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Collins*, 61 F.3d 1379 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Garza*, 980 F.2d 546 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*United States v. Leon*, 468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*United States v. Ramos*, 923 F.2d 1346 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Towne*, 997 F.2d 537 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zelig v. County of Los Angeles*, 27 Cal. 4th 1112 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

STATUTES AND RULES

California Civil Code, section 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

California Government Code, section 821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

California Government Code, section 810, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

California Government Code, section 810.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

California Government Code, section 815,subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

California Government Code, section 815.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

California Government Code, section 820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

California Government Code, section 820.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

California Government Code, section 815.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

California Government Code, section 821.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

California Government Code, section 900 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

California Government Code, section 26601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

California Penal Code, section 836 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States Constitution, Amendment IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1

2      Defendants COUNTY OF CONTRA COSTA (the "County"), SHERIFF WARREN

3   RUPF, MOULE, GARDNER, WESTERMAN, MARTINEZ, GIBSON, and VORHAUER

4   submit this opposition to Plaintiff's Motion for Partial Summary Judgment Against County of

5   Contra Costa, Jeff Moule and Brian Gardner.

6

7                                    INTRODUCTION

8      This case presents a unique question of potential liability under 42 U.SC. §1983 arising

9   from execution of a facially valid search warrant.   Plaintiffs were present at 6 Winifred Court

10   in Antioch when a search warrant was executed on March 14, 2008.   Law enforcement officers

11   had been involved in a long-term, statewide investigation of a large-scale narcotics ring known

12   to be importing significant amounts of illicit drugs from Mexico.   In executing the search

13   warrant at issue at 6 Winifred Court, the officers *had probable cause to search*, and a *facially*

14   *valid search warrant* signed by a Superior Court judge.   Unbeknownst to the officers serving

15   the warrant, however, the sealed portion of the underlying probable cause statement apparently

16   relied upon by the judge, inadvertently omitted facts detailing later-acquired indicia of

17   probable cause for 6 Winifred.   While there had been an *earlier* preliminary finding by officers

18   that they could not determine which of two houses on Winifred Court the suspected drug

19   trafficker had entered, officers subsequently obtained information, during a traffic stop, that

20   established the *specific* address as *6* Winifred Court.   It was only after obtaining the additional

21   information regarding the specific address that officers sought a search warrant for 6 Winifred.

22      Plaintiff's complaint asserts ten causes of action against eleven defendants. Only the

23   first, second, fourth, ninth and tenth causes of action, and defendants Moule, Gardner and the

24   County are at issue in the instant motion.   Moule, Gardner and the County (collectively

25   "Opposing Defendants") oppose plaintiffs' motion for partial summary judgment, and

26   defendants Rupf, Westerman, Martinez, Gibson and Vorhauer join in the opposition.   Moule

27   and Gardner assert qualified immunity shields them from any liability that might otherwise

28   arise, and Opposing Defendants assert there is no basis for any liability on the state law claims

1   asserted for trespass, negligence and liability under Civil Codes section 52.1.

2   FACTUAL SUMMARY

3       In 2006, the federal government recruited the County (Sheriff's Office) and other local

4   law enforcement agencies to assist in a large-scale, multi-state investigation into trafficking of

5   illicit drugs from Mexico into the U.S.  Beginning in 2006, FBI case agent Carpluk, along with

6   officers from the County, Antioch and other local law enforcement agencies, conducted

7   surveillance on a number of vehicles and persons involved in transporting large amounts of

8   illicit drugs from Mexico to distribution points in Contra Costa County.  Dubbed "Operation

9   Broken Wheel," the surveillance resulted in searches, seizures and arrests, including seizures

10  of hundreds of pounds of illicit drugs, such as cocaine and methamphetamine, as well as

11  hundreds of thousands of dollars in cash.[1]  Experienced County law enforcement officers

12  involved in Operation Broken Wheel included defendants Moule and Gardner, and other

13  defendants.   Doc. #39 (Moule Dec.) ¶¶2-5; Doc. #40 (Gardner Dec.) ¶¶2-5; Doc. #41 (Gibson

14  Dec.) ¶¶2-5; Doc. #42 (Vorhauer Dec.) ¶¶2-5; Doc. #43 (Martinez Dec.) ¶¶2-5.

15      FBI case agent Dave Carpluk was the contact person and "point man" in charge of the

16  County's participation in the surveillance and investigation efforts for Operation Broken

17  Wheel in Contra Costa County.  Generally, Agent Carpluk met with the County team daily

18  when Operation Broken Wheel surveillance/investigation activities were being undertaken.

19  Agent Carpluk directed Operation Broken Wheel, outlined what activities were being

20  undertaken on any given day, and provided instruction and oversight on when it was

21  appropriate to seek and execute search warrants.  Agent Carpluk told team members, including

22  defendants here, what they could and could not do, and advised where they should proceed on

23  surveillance and investigations.  Doc. #39 (Moule Dec.) ¶6.

24      In early March 2008, the County Sheriff's Office was put on alert and Operation

25  Broken Wheel team members were told by FBI case agent Dave Carpluk that he had spoken

26

27      [1]  See Doc. #46, Request for Judicial Notice in support of Defendants' Motion for Partial
Summary Judgment, Exhibit A, the Grand Jury Indictment, which resulted in part from the Operation
28  Broken Wheel investigation.

1  with the federal Drug Enforcement Agency ("DEA") in Southern California.  Carpluk reported

2  the DEA received information from a reliable informant that over 400 pounds of

3  methamphetamine were being smuggled into the U.S. and a large portion was expected to be

4  shipped to the San Francisco bay area.  The DEA directed that if the team located a trafficker's

5  vehicle, they should conduct surveillance.  The team was also advised by the federal agents

6  that if probable cause existed for seeking search warrants for the persons or homes suspected

7  of receiving narcotics shipments (i.e. drug drop locations), they should write applications and

8  seek search warrants.  Instructions from the federal agents were *not* to stop the blue van,

9  however, or apprehend the driver, without further instruction.   Doc. #39 (Moule Dec.) ¶7;

10  Doc. #40 (Gardner Dec.) ¶6; Doc. #41 (Gibson Dec.) ¶6; Doc. #42 (Vorhauer Dec.) ¶6; Doc.

11  #43 (Martinez Dec.) ¶6.

12          On March 13, 2008, County deputy Gardner sighted one of the targets, a blue Honda

13  minivan (the "blue van"), at 523 Harvey Way (a suspected drug house).  Doc. # 40 (Gardner

14  Dec.) ¶¶5-8.  Defendant officers and other law enforcement officers then surreptitiously

15  followed the blue van to various stops consistent with drug drop activities.  By early March 14,

16  2008, four drug drop locations had been identified.  *Id.* at ¶11.  At one of the drop locations,

17  however, the officer on foot with the closest view of the blue van could not *initially* determine

18  which of two houses on Winifred Court the suspect entered.  Doc. #43 (Martinez Dec.) ¶9.

19  Therefore, the probable cause statement preliminarily drafted in support of the application for

20  a number of search warrants "bypassed" the Winifred location and a paragraph reflected that it

21  was "undetermined" which house the suspect entered.  See Doc. #40 (Gardner Dec.) ¶12, and

22  Ex. 4, p. CC49, ¶3.

23          When the blue van left Winifred, another car (later identified as a "Dodge Intrepid")

24  parked next to the blue van also left, following the blue van out of the neighborhood.  Soon

25  thereafter, two other officers involved in the narcotics investigation (Vorhauer and Gibson)

26  executed a traffic stop of the Dodge Intrepid, which had been seen leaving the driveway on

27  Winifred Court where the target blue van had arrived, parked and then departed.  When

28  questioned by Vorhauer and Gibson independently, both the driver and passenger of the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER- C 09-1241                                                                                    3

1  Dodge Intrepid identified "6 Winifred" as the address from which they had come.  They also

2  each gave as their destination an address for another house suspected to be involved in drug

3  trafficking.  The confirmation of both addresses was transmitted by Vorhauer and Gibson to

4  Moule, who was relaying information among the team members by radio/phone.  After the

5  driver and passenger of the Dodge Intrepid identified "6 Winifred," Moule contacted Martinez,

6  the officer on foot who initially surveilled the blue van on Winifred.  Martinez confirmed that

7  the address "6 Winifred" was consistent with the house adjacent to the driveway where the

8  blue van and the Dodge Intrepid had been parked.  Moreover, Martinez heard Moule confirm

9  that Antioch officer and team member Wisecarver had run the addresses on Winifred, and

10  found a number of law enforcement contacts at 6 Winifred and no recent contacts at the house

11  next door, which was determined to be 5 Winifred.  Doc. #43 (Martinez Dec.) ¶11.  Deputy

12  Gardner ultimately used the additional information to revise the probable cause statement in

13  support of a search warrant application for 6 Winifred Court.  Doc. #39 (Moule Dec.) ¶¶8-13;

14  Doc. # 40 (Gardner Dec.) ¶¶5-14; Doc. #41 (Gibson Dec.) ¶¶7-12; Doc. #42 (Vorhauer Dec.)

15  ¶¶6-11; Doc. #43 (Martinez Dec.) ¶¶5-13.

16        During the night of March 13-14, 2008, Deputy Gardner was at the Sheriff's Office

17  substation drafting and revising the probable cause statements in support of applications for

18  search warrants for the four suspected drug drop locations, as further evidence of probable

19  cause was established and communicated to him.  Because of the on-going, large-scale, and

20  covert nature of the Operation Broken Wheel investigation, a significant portion of the

21  probable cause statements in support of search warrant applications were "sealed" by the

22  issuing judge.  This was designed to prevent suspects involved in the underlying drug

23  trafficking from discovering the details of the law enforcement investigation and activities,

24  which might result in compromising continuing efforts and officer and citizen safety.

25  Therefore, immediately upon issuing a search warrant, the judge would place the sealed

26  portion of the probable cause statement in an envelope and literally seal it with tape, and the

27  requesting officer would do the same and deliver it to the judge on the next business day, or

28  immediately shred the sealed portion on site.  On March 14, 2008, the majority of the text for

1   probable cause statements was under seal, due to the sensitivity of the facts underlying the

2   large-scale investigation at that point in time.  Gardner Declaration in Opposition to Plaintiffs'

3   Motion for Partial MSJ, ¶10.

4          Gardner first submitted a search warrant application with a probable cause statement,

5   including a "sealed portion," for 2209 Lynbrook.  After he obtained that warrant, he left the

6   substation to assist in the execution of the Lynbrook search warrant, which yielded several

7   pounds of cocaine and methamphetamine.  After 3:00 a.m. March 14, 2008, which was after

8   the traffic stop of the Dodge Intrepid,  Gardner continued drafting, revising and finalizing the

9   14-page "sealed portion" of the probable cause statement for the search warrant application for

10  the three remaining drug drop locations, including Winifred Court.  In his further revision,

11  Gardner removed the paragraph about the "undetermined" status of the house number on

12  Winifred, and drafted new language about the traffic stop and the probable cause indicia that

13  *thereafter* existed for the search of *6* Winifred.  As detailed above, the newly obtained

14  information for probable cause included the identification of "6 Winifred" by the occupants of

15  the Dodge Intrepid and on-site observations by Deputy Martinez, coupled with information

16  from the lengthy investigation, and many other observations of the blue van, as well as the

17  result of the 2209 Lynbrook search. Doc. #40 (Gardner Dec.) ¶¶5-14; Ex. 4, p. CC38 ¶1.

18         Gardner then faxed the "sealed portion" of the probable cause statement to the Superior

19  Court judge, along with other papers incidental to the application for the search warrant.  The

20  judge faxed back *only* the signed search warrant and unsealed affidavit, attached as Exhibits 1

21  and 2, respectively, to the Declaration of Brian Gardner.  Doc. #40, ¶14, Exs.1, 2.  Defendant

22  officers later executed the signed search warrant at 6 Winifred.  In accord with normal

23  protocol, the "sealed portion" of the probable cause statement was *not* reviewed by, or even

24  available to, the officers executing the search warrant, but instead sealed immediately by the

25  judge issuing the search warrant.  Doc. #40 (Gardner Dec.) ¶¶9-16; Ex 1-2; Doc. #39 (Moule

26  Dec.) ¶15.  The only documents available to the officers executing the search warrant,

27  including Moule and Gardner, were the signed search warrant and unsealed affidavit.  *Id.*

28         The "sealed portion" of the probable cause statement was never again seen by Gardner,

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER- C 09-1241                                                                      5

1   and was never seen at all by Moule or any other warrant-executing defendant, until *after* this

2   ligation was well underway and a copy of the sealed portion was obtained by orders of this

3   Court and the Superior Court.  It was during this litigation that the parties and counsel learned,

4   for the first time, that the sealed portion of the probable cause statement, apparently relied

5   upon by the Superior Court judge, was *not* the revised version of the probable cause statement

6   that Gardner believed he faxed to the judge.  The version of the sealed portion Gardner

7   believed he faxed to the judge included, among other things, a detailed description of the

8   traffic stop and the information from the suspects detained by Gibson and Vorhauer

9   identifying 6 Winifred as the suspected drug drop location.  Instead, it appears from documents

10  obtained only during discovery in this litigation, that a prior version of the sealed probable

11  cause statement was apparently included by the judge in the search warrant packet.  Doc. #40

12  (Gardner Dec.) ¶¶9-16; Exs. 1-2, 4 at p. CC49, ¶3; Doc. #39 (Moule Dec.) ¶15.

13      With respect to plaintiffs' state law claims for negligence and violation of the Bane Act,

14  plaintiffs did not allege compliance, and indeed did not comply, with the Government Tort

15  Claims Act.  Holmes Dec., Ex. 6-8.

16                          SUMMARY OF ARGUMENT

17      Plaintiffs ignore the undisputed fact that the search warrant for 6 Winifred was "facially

18  valid."  Doc. 40, Ex. 1.  Plaintiffs also ignore the undisputed facts relating to the traffic stop

19  and probable cause information that was obtained *after* the officers' initial finding that it could

20  not be determined which of two houses the driver of the blue van had entered on Winifred

21  Court.

22      Plaintiffs ignore information that was detailed during several depositions in the case.

23  Instead, plaintiffs rely only on the "sealed portion/statement of probable cause." Doc.#40, Ex.

24  4, pp. CC 38-51 (herein referred to as the "sealed portion").  The sealed portion was submitted

25  as *part* of the affidavit in support of the warrant issued by Judge Kennedy for search of three

26  homes on the night of March 14, 2008, and had been under seal at all times since then.  The

27  sealed portion initialed by the judge was never viewed (prior to this litigation) by any of the

28  officers executing the search warrants on March 14, 2008.  Unbeknownst to any of the officers

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER-  C 09-1241                                                                6

1    serving the search warrant on March 14, 2008, the 14-page "sealed portion" apparently relied

2    upon by Judge Kennedy in issuing the facially valid search warrant inadvertently omitted the

3    information about the traffic stop that gave rise to the probable cause determination.

4         Moule and Garner submit they cannot be found liable on the first cause of action,

5    asserted under section 1983 for the execution of the search warrant at 6 Winifred, because they

6    reasonably relied on a facially valid search warrant, and qualified immunity applies.  Moule

7    submits he cannot be found liable on the second cause of action for section 1983 "supervisor

8    liability" under pertinent law.  *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009).

9    Plaintiffs' motion for partial summary judgment on the state law causes of action (4th, 9th, and

10   10th) must also be denied because they are predicated on plaintiffs' first and second causes of

11   action, which fail.

12                        ARGUMENTS AND AUTHORITIES

13        I.  MOULE AND GARDNER CANNOT BE FOUND LIABLE ON THE FIRST

14   CAUSE OF ACTION FOR IMPROPER SEARCH:  THE SEARCH WARRANT WAS

15   VALID ON ITS FACE, AND EXECUTING OFFICERS ARE ENTITLED TO QUALIFIED

16   IMMUNITY.

17             A.  The Warrant Was Facially Valid.

18        A search and seizure warrant will be found to be valid if it describes with particularity

19   the place to be searched and the objects to be seized.  *Mills v. Graves*, 930 F.2d 729, 732 (9th

20   Cir. 1991); *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1025-26 (9th Cir. 2001) *aff'd*

21   *Groh v. Ramirez*, 540 U.S. 551 (2004); *United States v. Garza*, 980 F.2d 546, 551 (9th Cir.

22   1992).  There is no requirement that a warrant specify the foundation for a finding of probable

23   cause.  *Mills, supra* at 732.   In this case, the search warrant issued for 6 Winifred Court

24   (plaintiffs' home) was facially valid as it correctly and adequately identified the address to be

25   searched and the objects to be seized, as also set forth in the unsealed affidavit.  See Doc. #40

26   (Gardner Dec.), Exs.1, 2.

27        Facial *in*validity most commonly refers to a warrant's unconstitutional overbreadth.

28   *United States v. Towne*, 997 F.2d 537, 549 (9th Cir. 1993), quoting *Ortiz v. Van Auken*, 887

1   F.2d 1366, 1370 (9th Cir. 1989) (holding that a warrant is "so facially deficient that it

2   precludes reasonable reliance" if it "fails to offer sufficiently detailed instruction" to the

3   officers charged with executing it "and instead leaves them guessing as to their task"); *see also*

4   *United States v. Leon*, 468 U.S. 897, 923 (1984).  Here, the warrant's facial validity cannot

5   seriously be questioned, as the warrant "particularly described the place to be searched, and

6   the … things to be seized."  U.S. Const. amend. IV.  It identified the 6 Winifred Court

7   property with specificity, identified with particularity the items to be searched for, and

8   contained none of the "catchall phrases" that courts have held render warrants facially

9   overbroad.  *United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) (citing cases); see Doc.

10  #40 (Gardner Dec.), Ex. 1.

11      Even a warrant issued with an incorrect house address will still be found to be facially

12  valid.  *United States v. Garza, supra*.  In *Garza*, the address on the search warrant was

13  mistakenly listed with a different house number from the suspect's.  The Ninth Circuit

14  determined there was probable cause to issue the warrant and that it was valid.  *Id.* at 551.

15      The Supreme Court has held that "it is inevitable that law enforcement officials will in

16  some cases reasonably but mistakenly conclude that probable cause is present."  *Anderson v.*

17  *Creighton*, 483 U.S. 635, 641 (1987).  When that happens, the officers "should not be held

18  personally liable."  *Id*.  Officers are immune from suit "when they reasonably believe that

19  probable cause existed, even though it is subsequently concluded that it did not, because they

20  'cannot be expected to predict what federal judges frequently have considerable difficulty in

21  deciding and about which they frequently differ among themselves.'"  *Smiddy v. Varney*, 665

22  F.2d 261, 269 (9th Cir. 1981) (quoting *Bivens v. Six Unknown Named Agents of the Federal*

23  *Bureau of Narcotics*, 456 F.2d 1339, 1349 (2d Cir. 1972) (Lumbard, J., concurring)), overruled

24  on different grounds by *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008); *Crowe v.*

25  *County of San Diego*, 593 F.3d 841, 868 (9th Cir. Cal. 2010).

26          B.  Defendants Moule and Gardner Are Entitled to Qualified Immunity.

27      Qualified immunity will apply to an officer's objectively reasonable conduct.  *Mills,*

28  *supra* at 731.  Where suspects had moved from a home and new residents moved in three

1    months prior to a search, the officers who executed the search pursuant to a valid warrant were

2    found to have acted reasonably.  *Los Angeles Co. v. Rettele*, 550 U.S. 609, 616 (2007).  In

3    *Rettele*, deputies had a search warrant for the homes of suspects, who were African-American.

4    When the warrant was executed, the residents of the home were found to be Caucasian.  The

5    U.S. Supreme Court found the deputies acted reasonably when they ordered the residents to

6    get out of bed unclothed and held them at gunpoint while the house was searched.  "Valid

7    warrants will issue to search the innocent, and people like [the residents] unfortunately bear

8    the cost." *Id.* at 615.  Qualified immunity also applies where officers search the wrong house

9    mistakenly identified in a warrant.  *Mendoza v. Whitehouse*, 2008 U.S. Dist. Lexis 63988

10   (N.D. Cal. 2008).  In *Mendoza*, a warrant was obtained to search a house with a different

11   address than the suspect's.  The court found the officers who followed the search leader to the

12   wrong house and searched it acted reasonably and were entitled to qualified immunity.  *Id.* at

13   *26-28.

14        A defendant officer may have a reasonable, but mistaken, belief about the facts or about

15   what the law requires in any given situation.  "Therefore, regardless of whether the

16   constitutional violation occurred, the [officer] should prevail if . . . . [he] could have

17   reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap County*, 931

18   F.2d 624, 627 (9th Cir. 1991); see also *Carpiaux v. City of Emeryville*, 2007 U.S. Dist. LEXIS

19   91574, 16-17 (N.D. Cal. Dec. 13, 2007).  Officers who execute a warrant will be protected by

20   qualified immunity even where the warrant is invalid.  *Ramirez,* 298 F.3d at 1027-28.  In

21   *Ramirez*, the Ninth Circuit held that a warrant that provided no description of the evidence

22   sought and did not refer to or incorporate the affidavit was facially invalid.  *Id.* at 1026.

23   Nonetheless, the court held that the executing officers were not required to "read or even see

24   the warrant; they may accept the word of their superiors that they have a warrant and that it is

25   valid." *Id.* at 1028; see also *Mills, supra* at 734 (officer who obtained and reasonably relied on

26   a warrant was entitled to qualified immunity even where the affidavit in support of the warrant

27   was not made under oath).  Where officers were informed that a warrant had been obtained

28   and what items could be seized, they would not be expected to know the warrant was

---

1  defective. *Ramirez* at 1028.

2      Here, it is undisputed that the Moule and Gardner had been involved in, and were aware

3  of, the amassing of sufficient information of probable cause for a search warrant for 6

4  Winifred after the traffic stop.  The driver and passenger of the Dodge Intrepid not only

5  identified 6 Winifred Court as the address from which they had come (where their vehicle was

6  observed parked beside the target blue van), they identified as their destination a suspected

7  drug house.  Doc. #41 (Gibson Dec.) ¶¶7-12; Doc. #42 (Vorhauer Dec.) ¶¶5-11.  It is also

8  undisputed that none of the executing officers, including Moule and Gardner, was aware that

9  the sealed portion of the probable cause statement relied upon by the issuing judge apparently

10 omitted the later-acquired, "traffic stop" information and on-site confirmation of probable

11 cause for *6* Winifred.  It is undisputed that none of the executing officers, including Moule and

12 Gardner, had access *at the time of search warrant execution* to the sealed portion of the

13 probable cause statement relied upon by the judge in issuing the search warrant for 6 Winifred

14 and two other suspected drug drop locations.  The sealed portion was not a part of the search

15 warrant executed by defendant officers. Doc. #40 (Gardner Dec.) ¶¶8,10-16,18, Ex. 1; Doc.

16 #39 (Moule Dec.) ¶¶9-13,15,18; Doc. #41 (Gibson Dec.) ¶¶7-12; Doc. #42 (Vorhauer Dec.)

17 ¶¶5-11; Doc. #43  (Martinez Dec.) ¶¶5-14; see also Doc. #45 (Zwickey Dec.) ¶¶4-6.

18 Therefore, the executing officer defendants, Moule, Gardner, Gibson, Vorhauer and Martinez,

19 are entitled to qualified immunity in executing the search warrant at 6 Winifred.

20     Gardner, who drafted and revised the search warrant application, must be afforded

21 qualified immunity under the facts of this case.  It is undisputed that Gardner revised his

22 probable cause statement to include the information from the traffic stop of the Dodge Intrepid

23 identifying 6 Winifred, as well as on-site detective Martinez's confirmation of 6 Winifred.

24 Doc. #40 (Gardner Dec.) ¶14.  Moreover, the sealed portion was 14 pages long, and Gardner

25 was working on the revisions to the sealed portion after 3:00 a.m., and after having

26 participated in a search of one of the four of that night's suspected drug drop location, which

27 yielded several pounds of illicit drugs.  *Id.*, at ¶¶13-15.  Gardner reasonably believed that his

28 revised information was included in the 14-page probable cause statement he faxed to Judge

1  Kennedy.  Judge Kennedy faxed back only the (facially valid) search warrant and *un*sealed

2  affidavit portion, which Gardner and others used in executing the search at 6 Winifred.  This

3  case clearly presents no facts akin to *Franks v. Delaware*, 438 U.S. 154 (1978) or *United*

4  *States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995), where it was alleged that the affidavits

5  contained deliberate or reckless omissions of facts that tended to mislead.  Rather, here it is

6  clear the probable cause existed, but the 14-page sealed probable cause statement apparently

7  contained a single inadvertently uncorrected paragraph.  A misrepresentation based on an

8  omission is material only where the omitted facts "cast doubt on the existence of probable

9  cause." *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992) (internal quotation marks

10  omitted).   As set forth in his declaration, Gardner and other team members initially bypassed

11  Winifred because at first it could not be determined precisely which house was the drop

12  location.  They later gained enough information to support probable cause for a search warrant

13  for 6 Winifred.  *Id*., at ¶¶11-16.  Gardner would not have submitted the application for search

14  warrant for 6 Winifred unless the team members obtained, as they did, additional information

15  to support probable cause.   *Id*., at ¶16.  Gardner believed, at all times from March 14, 2010

16  until he saw Exhibit 4 after it was unsealed in connection with this litigation, that the

17  information from the traffic stop was included in the statement of probable cause submitted

18  with the search warrant application on March 14, 2008.  *Id*.  In Gardner's entire career,

19  including drafting and submitting affidavits in support of over 80 to 100 search warrant

20  applications, he has never learned that, after his statement of probable cause submission, a

21  warrant was issued based on an apparent inaccurate recitation of the probable cause.

22  Gardner's "clear and certain recollection" is that the team had probable cause based on the

23  information gathered by Vorhauer and Gibson from the traffic stop, coupled with detective

24  Martinez's confirmation of the 6 Winifred address.  *Id*.  The principles of qualified immunity

25  shield an officer from personal liability when an officer reasonably believes that his or her

26  conduct complies with the law.  *Pearson v. Callahan*, 555 U.S.___, 129 S. Ct. 808, 823, 172

27  L. Ed. 2d 565 (2009).

28          Courts have long held that even if the warrant were ultimately determined to be

"invalid" because probable cause was insufficient in the sealed portion of the affidavit, the "good faith exception" to the exclusionary rule would apply, under the facts at bar, in a criminal matter. See *United States v. Leon*, 468 U.S. 897,922-23 (1984); *United States v. Ramos*, 923 F.2d 1346,1354-55 (9th Cir. 1990). The standard should be no more stringent here. *Ortiz*, *supra*, at 1368-69. Since defendant officers would be entitled to the benefit of the *Leon* "good faith exception" in a criminal matter, they should be afforded no less protection in this action. The officers in this case took every step that could reasonably be expected of them, and therefore should be afforded qualified immunity. *Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984). Moreover, as there appears to be no law exactly on point, based on the facts presented here, qualified immunity must shield Moule and Gardner, because they reasonably relied on a facially valid warrant issued by a judge. *Ibid.*; *Ortiz*, *supra*, at 1368-69. If it was *un*lawful for Moule and Gardner to rely on the facially valid warrant, the law was certainly unclear on that point, and qualified immunity must shield them from liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Moule and Gardner should prevail because they reasonably believed that their particular conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Because the officers' actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity. *Brooks v. City of Seattle*, 599 F.3d 1018, 1022 (9th Cir. 2010).

Therefore, plaintiff's motion for partial summary judgement on the first cause of action should be denied.

II. SERGEANT MOULE CANNOT BE FOUND LIABLE FOR "SUPERVISORY LIABILITY" UNDER SECTION 1983.

"A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446-1447 (9th Cir. 1991). A supervisor's liability is not based on vicarious liability, but is a form of direct liability. The "plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Ibid.* Where a supervisor acts as a line

1   officer during a search of a house, there will be no supervisory liability.  *Mendoza v.*

2   *Whitehouse*, 2008 U.S. Dist. Lexis 63988 (N.D. Cal. 2008).  In the present case, Detective

3   Severe was in charge of executing the warrant.  Sergeant Moule was not the team leader.  At

4   the time the warrant was served,  Moule was third or fourth in line in the stack.  He entered the

5   residence and went towards the back bedrooms to clear the area.  He did not act in a

6   supervisory role during the actual execution of the warrant.  Furthermore,  Moule had no

7   contact with plaintiff Lance Johnson until after he was handcuffed.  Moule sat Mr. Johnson up

8   to make sure he could breathe properly.   Moule did not stay to search the house, but left with

9   others to serve another warrant.  Doc. #39 (Moule Dec.) ¶16.  Moule's role in the search of the

10  Johnson home was limited and not a proximate cause of any injury to plaintiffs.

11      As the Supreme Court explained in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937

12  (2009), "the term 'supervisory liability' is a misnomer," because each "Government official,

13  his or her title notwithstanding, is liable only for his or her own misconduct."  *Id.* at 1949.

14  Therefore, to prevail on their claim of supervisory liability against Moule, plaintiffs must

15  demonstrate that Moule himself acted unconstitutionally, not merely that a subordinate did.

16  *Simmons v. Navajo County* 2010 U.S. App. LEXIS 12858 (9th Cir. June 23, 2010).  Plaintiffs

17  failed to demonstrate any such failure on the part of Moule; therefore no "supervisor liability"

18  can attach.

19      The cases cited by plaintiff are distinguishable for several reasons.  In the *Ramirez* case,

20  the ATF Agent and Sheriff deputies *conceded* that the warrant was *facially defective* as it

21  provided absolutely no description of the evidence sought.  *Ramirez v. Butte-Silver Bow*

22  *County*, *supra*,  298 F.3d 1022 , aff'd at *Groh v. Ramirez*, 540 U.S. 551 (2004).  The warrant in

23  that case did not refer to or incorporate the application or affidavit.  *Id.* at 1026.  Here the

24  warrant specifically described the premises to be searched and the items to be seized.  Doc.

25  #40 (Gardner Dec.) Exs. 1, 2.  The *Ramirez* court emphasized the particularity requirement –

26  that a warrant must be sufficiently particular to limit the likelihood and degree of confrontation

27  between the persons to be searched and the officers, and to enable the persons subject to the

28  search to challenge officers who may have exceeded the limits of the warrant.  Here, the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER-  C 09-1241                                                              13

1   particularity requirement was satisfied.

2        The *Ramirez* court also held that leaders of the search must read and understand the

3   scope and limitations of the warrant in order to obtain qualified immunity for their actions.

4   Line officers, on the other hand, may accept the word of their superiors that a valid warrant

5   exists. *Id.* at 1027-28.   In *Ramirez*, the Ninth Circuit held that the agent who obtained the

6   warrant and led the search was not entitled to qualified immunity because he admitted he did

7   not read the warrant after it was issued. *Id.* at 1028.   None of these facts exist in the present

8   case.  There is no evidence that Moule did not read the warrant signed by the judge.  And while

9   Moule was present at the search, it was Leslie Severe who led the search.   Most importantly,

10  in contrast to the facts in *Ramirez*, the warrant for 6 Winifred was *not* facially defective.  No

11  amount of reading of the warrant would have changed the outcome of the search – the warrant

12  adequately identified the address to be searched and the items to be searched.   On appeal, in

13  *Groh v. Ramirez* 540 U.S. 551 (2004), the Supreme Court found that without a description of

14  the items to be seized,  the search was essentially *warrantless*. *Id.* at 558.  This is not the case

15  with the facts at bar.  The facts of *Ramirez* do not support a finding in our case that Moule

16  should be denied qualified immunity.

17       Plaintiffs also cite *Marks v. Clarke*, 102 F.3d 1012  (9th Cir. 1996), which can be

18  distinguished on several grounds.  In that case, the affidavit supporting the search and seizure

19  warrant identified only *two* persons to be searched, but the warrant specified search of *all*

20  persons found at the residences. *Id.* at 1027-28.   The officers serving the warrant searched

21  everyone present at the two residences – dozens of people in total, including children and an

22  infant.  Because the warrant differed from and was unsupported by the affidavit, and because

23  probable cause did not exist for searching each individual, the court denied immunity to the

24  searching police officers. *Id.* at 1028.  However, the court stated that officers *would* be entitled

25  to immunity if their reliance on the (invalid) warrant was objectively reasonable.  Unlike the

26  current case, in the *Marks* case, the overbreadth of the warrant became apparent when the

27  officers were confronted with searching dozens of people, including young children.   *Id.* at

28  1029.

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER-  C 09-1241                                                              14

1       Indeed, a case cited by plaintiffs further demonstrates that Moule is protected by

2   qualified immunity.  Plaintiffs cite *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001).

3   In that case, officers sprayed plaintiff with a chemical irritant, pushed her to the ground, and

4   put her in a closed patrol car on a hot day which caused the chemical irritant to drip into her

5   eyes and ears.  The court held that the officers did not use excessive force and were entitled to

6   qualified immunity. Plaintiff also sought judgment against the municipality and the police

7   chief.  The court found a supervisor may be held liable under Section 1983 only if he or she

8   was personally involved in the constitutional deprivation or a sufficient causal connection

9   exists between the supervisor's unlawful conduct and the constitutional violation.  *Id.* at 653.

10  Here, Moule did not have access to the sealed portion of the probable cause statement for the

11  warrant application and was not involved in any claimed excessive force; therefore qualified

12  immunity shields him from liability.  There is no basis for Moule to be denied qualified

13  immunity based upon his alleged status as a "supervisor" for purposes of section 1983 in this

14  case.  Therefore, the plaintiff's motion for summary judgment on the second cause of action

15  must be denied.

16      III.  PLAINTIFFS CANNOT ESTABLISH ANY STATE LAW CAUSES OF ACTION

17  (FOURTH, NINTH AND TENTH CAUSES OF ACTION) AGAINST DEFENDANTS

18          A.  The Causes of Action for Negligence and Civil Code Section 52.1 Fail

19  Because Plaintiffs Did Not Allege Compliance, and Did Not Comply, With the Government

20  Tort Claims Act

21      Under the California Government Tort Claims Act ("Tort Claims Act") plaintiffs are

22  required to present a written claim to the public entity allegedly responsible for damages prior

23  to initiating a lawsuit on state law causes of action.  Gov. Code, § 810, et seq.  Timely

24  compliance with the claims presentation provisions of the Tort Claims Act is mandatory and a

25  condition precedent to maintenance of an action against a public entity.  Failure to file a claim

26  is fatal to the claimant's cause of action.  Gov. Code, § 900, et seq; *Janis v. California State*

27  *Lottery Commission,* 68 Cal. App. 4th 824, 832 (1998); *Fall River Joint Unified School Dist. v.*

28  *Superior Court,* 206 Cal. App. 3d 431 (1988).  The time requirements are jurisdictional, and

1   must be met and affirmatively pled in the complaint in order to proceed.  *Karim-Panahi v. Los*

2   *Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); see Plaintiffs' Complaint, Doc. # 1.

3       Moreover, the government tort claims that were filed on behalf of plaintiffs do not

4   allege facts giving the County adequate notice of the claims set forth in the complaint.  The

5   factual bases set forth in the claim must correspond with the facts alleged in the complaint.

6   *Nelson v. State of California*, 139 Cal.App.3d 72, 79 (1982); Declaration of Janet Holmes, Exs.

7   6-8.  For example, the claims of both Arthur Lee Johnson and Josephine Johnson arguably set

8   forth claims for trespass, but not for negligence or the Bane Act.  Holmes Dec., Ex.6, 7.

9   Similarly, the claim of Lance Johnson, arguably sets forth claims for trespass, assault and false

10  imprisonment, but not for negligence or the Bane Act.  Holmes Dec., Ex. 8.

11      Because plaintiffs' state law claims are subject to dismissal for plaintiffs' failure to

12  allege compliance, and plaintiffs' failure in fact to comply, with the claim-filing requirement of

13  the Tort Claims Act, they cannot prevail on summary judgment on the claims for negligence

14  and Civil Code section 52.1. *Karim-Panahi*, *supra*, at 627.

15          B.  The County Cannot Be Directly Liable On Any State Law Cause Of Action

16      There is no common law governmental tort liability in California; a public entity is only

17  liable in tort as provided by statute.  *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1127

18  (2002); Gov. Code, § 815, subd. (a).  "'[D]irect tort liability of public entities must be based on

19  a specific statute declaring them to be liable, or at least creating some specific duty of care, and

20  not on the general tort provisions of Civil Code section 1714.'"  *Eastburn v. Reg'l Fire Prot.*

21  *Auth.*, 31 Cal. 4th 1175, 1183 (2003).  A public entity's statutory duty can only be imposed by

22  an enactment, which is "a constitutional provision, statute, charter provision, ordinance or

23  regulation."  Gov. Code, §§ 815.6, 810.6.  Whether an enactment is designed to impose a

24  mandatory duty is a question of law for the court.  *Nunn v. State of California*, 35 Cal. 3d 616,

25  624 (1984).  To state a cause of action, every fact essential to the existence of statutory liability

26  must be pleaded with particularity, including the identity of the statute alleged to establish a

27  duty.  *Susman v. City of Los Angeles,* 269 Cal. App. 2d 803, 809 (1969); *Searcy v. Hemet*

28  *Unified School Dist.*, 177 Cal. App. 3d 792, 802 (1986).

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER-  C 09-1241                                                                        16

1    Plaintiff has cited no statute that *specifically* sets forth County liability, so their state

2    law claims against the County are barred.  As set forth below, even assuming *arguendo* that the

3    County is vicariously liable for the acts of Moule and Gardner, no underlying liability can be

4    established.  Further, if Moule and Gardner are immune, so is the County.  Gov. Code, §

5    815.2(b); See section F below.

6                    C.  Plaintiffs Cannot Establish Trespass As A Matter Of Law

7    Plaintiffs cite to no case law supporting their cause of action for trespass.  Moreover,

8    they refrained from including the key factor in establishing trespass, that the entry must be

9    *unauthorized*.  *Carpiaux v. City of Emeryville*, 2007 U.S. Dist. LEXIS 91574, *22 (N.D. Cal.

10   2007), citing *Church of Christ in Hollywood v. Superior Court*, 99 Cal. App. 4th 1244, 1252

11   (2002).  As argued above in section I, the undisputed facts establish that the entry was

12   authorized and that the search warrant at issue was facially valid. While plaintiffs argue that

13   the sealed portion of the affidavit used to obtain the search warrant makes the warrant invalid

14   as a matter of law, it is undisputed that no officer, including Gardner, was aware of the alleged

15   contents of the sealed portion of the affidavit.  It is further undisputed that the warrant on scene

16   was signed by a judge and described with particularity the place to be searched and the objects

17   to be seized.  Because the warrant was facially valid, Moule and Gardner cannot be liable

18   herein as the entry was authorized.  See *Mills v. Graves*, 1991 U.S. App. Lexis 11165, *7 (9th

19   Cir. 1991); *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1025-26 (9th Cir. 2001), aff'd

20   *Groh v. Ramirez*, 540 U.S. 551 (2004).  While defendants contend that the matter can be

21   decided in their favor as a matter of law, there is *at least* a dispute of material fact as to

22   whether the entry was authorized, thus barring plaintiffs' motion on the trespass cause of

23   action.

24   Further, state law immunities bar plaintiffs' trespass claim.  Under section 821.8, a

25   public employee is "not liable for an injury arising out of his entry upon any property where

26   such entry is expressly or impliedly authorized by law."  At the time of the entry into

27   plaintiffs' home, the warrant was valid on its face (signed by a judge and described with

28   particularity the place to be searched and the objects to be seized).  It is undisputed that no

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER-  C 09-1241                                                                                              17

1   officer, including Moule and Gardner, had any information that the warrant was, or could

2   conceivably be, invalid.  Therefore, they would be immune for their actions because the entry

3   was "expressly or impliedly authorized by law."  Gov. Code, § 821.8; *Ogborn v. City of*

4   *Lancaster*, 101 Cal. App. 4th 448, 462 (2002).

5        Defendants would also be immune under Government Code sections 820.2 for their acts

6   of discretion in executing the facially valid search warrant, whether or not the discretion was

7   abused; 820.4 for their enforcement of law with due care; and 821.6 for their acts in

8   furtherance on the federal criminal prosecution under the auspices of Operation Broken Wheel,

9   which culminated in the indictment attached as Exhibit A to Defendants' Request for Judicial

10   Notice (Doc. #46), as set forth more fully below in section F.

11        Moreover, if defendants Moule and Gardner are immune, the County is immune.  Gov.

12   Code., § 815.2, subd. (b).

13               D.  There Can Be No Negligence As A Matter Of Law On The Facts Alleged

14        While common law torts against public entities have been abolished (see Section B,

15   above), the plaintiffs assert a cause of action for negligence.  The elements of a cause of action

16   for negligence are "(1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the

17   breach as the proximate or legal cause of the resulting injury."  *City of Sacramento v. Superior*

18   *Court,* 131 Cal. App. 3d 395, 402 (1982).  Plaintiffs cannot establish any of the requisite

19   negligence elements against them under the undisputed facts of the case.  If the defendants'

20   showing negates an essential element of the plaintiffs' case then "'no amount of factual

21   conflicts upon other aspects of the case" will preclude summary judgment.  *Clarke v. Hoek,*

22   174 Cal. App. 3d 208, 214 (1985).

23        While breach of duty and proximate cause are normally factual questions, the existence

24   of a legal duty in a given factual situation is a question of law for the court to determine.

25   *Clarke, supra,* at 213.  Since the existence of a statutory duty would be an essential element of

26   a negligence cause of action against defendants here, summary judgment for defendants may

27   be properly granted where the plaintiff is unable to show that the defendants owed such a duty.

28    *Id.* at 213-214.  Plaintiffs have identified no duty that defendants are alleged to have

1  breached.  The duty of law enforcement officers to the community is to promote law-abiding,

2  orderly conduct, including, where necessary, to detain and arrest suspected perpetrators of

3  offenses.  None of these duties have been breached under the facts at bar.  California Sheriffs

4  are required to pursue and arrest those who attempt to commit or actually commit a public

5  offense.  Gov. Code, § 26601.  This is exactly what defendants were engaged in, and no breach

6  occurred.  All law enforcement officers are authorized to arrest under Penal Code section 836.

7  Under the facts at bar, even assuming *arguendo* that the court finds that the defendants had a

8  legal duty to act in a certain way under the undisputed facts of this case, there could be no

9  breach, as the officers were acting in good faith and in compliance with their understandings of

10  the law.  Without a breach, there can be no liability for a cause of action under negligence.

11  Proximate cause "limits the defendant's liability to those foreseeable consequences that

12  the defendant's negligence was a substantial factor in producing."  *Mendoza v. City of Los*

13  *Angeles,* 66 Cal. App. 4th 1333, 1342 (1998).  Whether an act is the proximate cause of injury

14  "is a question of law where the facts are uncontroverted and only one deduction or inference

15  may reasonably be drawn from those facts."  *Garman v. Magic Chef, Inc.,* 117 Cal. App. 3d

16  634, 638 (1981).

17  Moule and Gardner conducted themselves as an objectively reasonable officer would

18  have under similar circumstances.  If the court finds that either of them deviated from the

19  standard of reasonable care, i.e., with respect to Gardner mistakenly faxing the wrong probable

20  cause affidavit to the judge, they would be immune under Government Code sections 820.2

21  and 821.6, as set forth in Section F below.  Gov. Code, §§ 820.2, 821.6.

22  E.  Plaintiff Cannot Establish As A Matter Of Law That Any Defendant Violated

23  The Bane Act.

24  Plaintiffs' claims under the Bane Act (Cal. Civ. Code §52.1) rely on the same alleged

25  constitutional violations that form the basis for their section 1983 claim.  Because plaintiffs

26  cannot prevail on their Section 1983 claim, they cannot prevail on his claim under the Bane

27  Act.  *Herve v. San Francisco*, 2004 U.S. Dist. LEXIS 25281 (N.D. Cal. 2004).  Plaintiffs also

28  fail to allege any "threats, intimidation or coercion" by Moule or Gardner to hold them liable

1  under the Bane Act.  Moreover, as set forth above, plaintiffs did not allege Civil Code 52.1 in

2  their government tort claims, and on that basis their claim must fail.  *Maestrini v. City and*

3  *County of San Francisco*, 2009 U.S. Dist. LEXIS 25179, *19-23 (N.D. Cal. 2009).

4        F.  Immunities Shield All Defendants on Plaintiffs' Claims for Trespass,

5  Negligence and Bane Act.

6        Under Government Code section 821.6, "[a] public employee is not liable for injury

7  caused by his instituting or prosecuting any judicial or administrative proceeding within the

8  scope of his employment, even if he acts maliciously and without probable cause."  Gov. Code,

9  § 821.6.  Although section 821.6 is often used to immunize defendants from malicious

10  prosecution claims, it is not limited to that use.  *Jenkins v. County of Orange*, 212 Cal. App. 3d

11  278, 283 (1989).  Immunity under section 821.6 specifically applies to allegations of

12  negligence.  *Parkes v. County of San Diego*, 345 F. Supp. 2d 1071, 1082 (S.D. Cal. 2004)

13  (citing Jenkins, 212 Cal. App. 3d at 286).  The immunity also "'extends to actions taken in

14  preparation for formal proceedings,' including actions 'incidental to the investigation of

15  crimes'" because an investigation is an essential step in initiating such proceedings.

16  *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007), quoting *Amylou R. v.*

17  *County of Riverside*, 28 Cal. App. 4th 1205, 1210-11(1994)).  Officer defendants are entitled to

18  immunity under section 821.6, even if this alleged tortious conduct was caused maliciously or

19  in the absence of probable cause. See *Javor v. Taggart*, 98 Cal. App. 4th 795, 808-09, 120 Cal.

20  Rptr. 2d 174 (2002) (law enforcement officers are granted immunity from civil liability under

21  the provisions of section 821.6 when the malicious abuse of their power is confined to actions

22  taken during the investigatory stages).  While conceding that section 821.6 provides immunity

23  to officers who conduct erroneous investigations may at times result in injustices, "California

24  courts . . . have accepted such a consequence." *Trujillo v. City of Ontario*, 428 F. Supp. 2d

25  1094, 1124-25 (C.D. Cal. 2006) ("'[I]n the end [it is] better to leave unredressed the wrongs

26  done by dishonest officers than to subject those who try to do their duty to the constant dread

27  of retaliation.'" (quoting *Amylou*, 28 Cal. App. 4th at 1213.); see also *Ewing v. City of*

28  *Stockton*, 2008 U.S. Dist. LEXIS 9528, 100-107 (E.D. Cal. Feb. 7, 2008).

1    It is undisputed that the search at issue arose from a multi-jurisdictional investigation.

2    Section 821.6 should immunize Moule and Gardner as investigating officers from liability for

3    injuries allegedly arising from the execution of the search warrant.  See *Baughman v. State*, 38

4    Cal. App. 4th 182, 192-93 (1995) (during execution of the search warrant, "the officers'

5    actions . . . were cloaked with immunity [under section 821.6], even if they had acted

6    negligently, maliciously or without probable cause in carrying out their duties") (internal

7    citations omitted).

8                                        CONCLUSION

9    Based on the undisputed facts, and applicable law, plaintiffs' motion for partial

10   summary judgment on the first, second, fourth, ninth and tenth causes of action must be

11   denied.

12

13   DATE: August 12, 2010                    SHARON L. ANDERSON
                                              COUNTY COUNSEL
14

15

16                                                       /s/

17                                          By:_____
                                                  Janet L. Holmes
18                                                Deputy County Counsel
                                                  Attorneys for Defendants
19                                                COUNTY OF CONTRA COSTA,
                                                  SHERIFF WARREN RUPF,
20                                                MOULE, GARDNER,
                                                  WESTERMAN, MARTINEZ,
21                                                GIBSON, VORHAUER

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST COUNTY OF CONTRA COSTA, JEFF MOULE AND BRIAN
GARDNER-  C 09-1241                                                            21